IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

```
JARRETT DELANEY MEYERS,          *
                                 *
     Plaintiff,                  *
                                 *
     v.                          *    CV 421-220
                                 *
JOHN T. WILCHER, LT. MURRY,      *
COMMANDER TODD A. FREESEMANN,    *
COUNSELOR WILLIAMS, UNIT ID      *
SUPERVISORS, MS. PERRY,          *
OFC. MCKLAIN, CORPORAL NOVAK,    *
SGT. COCHRAN,                    *
                                 *
     Defendants.                 *
```

O R D E R

Plaintiff filed this lawsuit while housed at the Chatham County Detention Center. (Compl., Doc. No. 1, at 2.) Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP") in this case brought under 42 U.S.C. § 1983. (Doc. No. 4 (granting IFP status).) Because he is proceeding IFP, Plaintiff's pleadings must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (per curiam); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (per curiam); 28 U.S.C. § 1915A. A *pro se* litigant's pleadings are held to a more lenient standard than those drafted by an attorney, Erickson v. Pardus, 551 U.S. 89, 94 (2007), but the Court may dismiss the Complaint or any portion thereof if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or if it

seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

## I. BACKGROUND

Plaintiff's Complaint alleges that he entered the Chatham County Detention Center on May 5, 2021. (Doc. No. 1, at 4.) There, he reported that he had been sexually assaulted and sodomized immediately prior to his intake.[1] (Id.) After reporting the incident, Plaintiff met with Defendants Perry and McClain "from the classification board," who immediately moved him into the mental health dorm, where Plaintiff reported the assault to the LPC as well as Defendant Williams. (Id.) Plaintiff alleges that afterwards, "nothing was done." (Id.) He received no counseling, no referrals, and no assistance in further reporting the assault to the proper authorities. (Id.) Plaintiff wrote to Defendant Wilcher and Defendant Freeseman regarding the issue, and he received a response telling him to contact the police agency who had jurisdiction where the crime happened. (Id. at 6.) Plaintiff asked the counselor for contact information for that agency, but he received no assistance. (Id.) It was only after his mother reported the incident to the rape crisis center that the Savannah

---

[1] Plaintiff does not indicate whether his assault occurred within the prison system.

Police Department became involved in the investigation. (Id. at 7.)

Soon after his reporting of the crime, other inmates within the jail began sexually harassing Plaintiff. (Id. at 5.) He reported the harassment and asked to be moved, but he says he was ignored. (Id.) On June 8, 2021, several inmates threatened to "jump" him. (Id.) Officer Jones noticed the threat and responded by locking Plaintiff and the instigator down earlier than normal. (Id.) Plaintiff reported the threat on the jail kiosk and then was moved to an upstairs cell the next day. (Id.) Prior to Plaintiff's arrival in his new cell, a trustee hid some undescribed metal (presumably contraband) under the cell's sink to "set" Plaintiff up. (Id.) Moreover, Plaintiff believes the trustee was sent to his cell to "bring word to gang members of the Gangster Disciples to 'beat' the guy on the vegan diet," referencing Plaintiff. (Id.)

After that incident, Plaintiff met with Defendants Murry and Perry from the classification board, where he complained about the decision to move him upstairs. (Id. at 6.) Plaintiff was then placed into isolation/segregation where he had no problems until he was moved again, this time into Unit 2C. (Id.) He states that the administrators' decision to move him from segregation was "obviously negligent." In 2C, he was harassed by an Officer Millige and was deprived of recreation time. (Id.) On July 24,

2021, two of the gang member inmates who previously harassed Plaintiff were transferred to his dorm. (Id.)

Plaintiff alleges that promises were made which were not kept. He has had difficulty obtaining printouts and records of his accounts, and even though he has asked Counselor Robinson for names of staff members involved in his case, he has received no answer. He has requested that members of the gang be placed on a list of separation, but they were not. (Id.) Thus, Plaintiff believes that the officers and staff of the prison are being paid by the gang. Plaintiff does not demand specific monetary relief. He requests oversight or to be moved. (Id. at 7.) Plaintiff is proceeding *pro se*, and therefore the Court liberally construes his pleadings. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). Thus, the Court will construe his miscellaneous requests as demands for injunctive relief requiring the prison to segregate him away from his would-be attackers and for someone to investigate his claims of sexual assault.

On October 29, 2021, the United States Magistrate Judge entered a Report and Recommendation, recommending dismissal due to Plaintiff's failure to return certain PLRA forms. (Doc. No. 15.) Thereafter, Plaintiff filed a motion for extension of time to file Objections (doc. no. 16), a motion to appoint counsel (doc. no. 17), and an "Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order" (doc. no. 18). Plaintiff also filed

4

his PLRA forms on the docket, belatedly attempting to comply with the court order in an effort to avoid the Magistrate Judge's recommendation of dismissal. (See Doc. Nos. 18, 19, 20.) Similarly, he objected to the Magistrate Judge's Report and Recommendation, arguing that prison mail is intentionally withheld by officials who caused the delay.[2] (See Doc. No. 22.) The case was then transferred to the undersigned on March 4, 2022. (Doc. No. 23.)

## II.  LEGAL STANDARD

A complaint or any portion thereof may be dismissed if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. § 1915(e)(2)(B). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which

---

[2] This grievance is the subject of another Complaint filed by Plaintiff. See Myers v. Wilcher, Case No. 4:21-CV-254 (S.D. Ga. Sept. 19, 2021).

relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, courts afford a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson, 551 U.S. at 94; Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that courts have a duty to re-write the complaint.

Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### III. DISCUSSION

Even though Plaintiff did not comply with the Order of July 30, 2021 by returning his forms in a timely manner, the Court will review the merits of his Complaint to determine if he has stated a claim against the Defendants. First, however, the Court resolves the miscellaneous requests filed by Plaintiff. Plaintiff's motion for extension of time to file objections (doc. no. 16) is **DENIED as MOOT** since Plaintiff eventually filed his forms. Likewise, the Court **DECLINES TO ADOPT** the Magistrate Judge's Report and Recommendation (doc. no. 15) that this case be dismissed for Plaintiff's failure to return the PLRA forms or to update his address. Rather, after review of the merits, the Court must dismiss the Plaintiff's Complaint for failure to state a claim, pursuant to the PLRA. Plaintiff's motion to appoint counsel (doc. no. 17) is also **DENIED**. See Wright v. Langford, 562 F. App'x 769, 777 (11th Cir. 2014) ("Although a court may, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff, it has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances.") (citing Bass v. Perrin, 170 F.3d 1312, 1320 (11th Cir. 1999)).

The Court now addresses the substance of Plaintiff's Complaint. "[P]rison officials have a duty to protect prisoners

from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quotation marks omitted and alterations adopted); Rodriguez v. Sec'y for Dep't of Corr., 508 F.3d 611, 616-17 (11th Cir. 2007). Failing to do so may constitute a failure to prevent harm in violation of the Eighth Amendment. Bowen v. Warden Baldwin State Prison, 826 F.3d 1312, 1320 (11th Cir. 2016). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834.

To state an Eighth Amendment claim premised on a failure to prevent harm, a plaintiff must allege facts showing that: (1) a substantial risk of serious harm existed; (2) the defendants were deliberately indifferent to that risk, *i.e.*, they both subjectively knew of the risk and also disregarded it by failing to respond in an objectively reasonable manner; and (3) there was a causal connection between the defendants' conduct and the Eighth Amendment violation. Bowen, 826 F.3d at 1320; see also Purcell ex rel. Est. of Morgan v. Toombs Cnty., Ga., 400 F.3d 1313, 1319-20 (11th Cir. 2005).

Plaintiff has the right "to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates." Purcell, 400 F.3d at 1320-21 (quoting Woodhous v. Virginia, 487 F.2d 889, 890 (4th Cir. 1973)). However, while "confinement in a prison where violence and terror reign is

8

actionable," id. at 1320, courts "stress that [a] plaintiff . . . must show more than 'a generalized awareness of risk.'" Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1101 (11th Cir. 2014) (quoting Carter v. Galloway, 352 F.3d 1346, 1349 (11th Cir. 2003)). To the extent that Plaintiff seeks to establish the prison conditions created a constant threat of violence and pervasive sexual assault by his fellow inmates, his claim fails. In order to show that a substantial risk of serious harm existed based on the general threat posed by broad based inmate-on-inmate violence, Plaintiff must prove "that serious inmate-on-inmate violence was the norm or something close to it." Purcell, 400 F.3d at 1322 (citation omitted). Plaintiff has pleaded something closer to a vague risk, rather than violence as the norm, and thus there does not appear to be a substantial risk of harm warranting a constitutional claim. Cf., Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1024 n.5 (11th Cir. 2001) (describing a host of jail conditions underlying a determination that there was a substantial risk of harm).

Moreover, Plaintiff has not stated a claim that any state actor was deliberately indifferent to the complained of risk. In fact, Plaintiff affirmatively pleads that the officials of the prison responded to his complaints by repeatedly moving him away from his harassers. First, he states that Defendants Perry and McClain "immediately" moved him into the mental health dorm after his initial report. (Doc. No. 1, at 4.) Next, Plaintiff inconsistently alleges

9

that Defendant Murry did not "put in" with classification officer Defendant Perry, but also admits that after complaining of continuing harassment to Defendants Perry and Murry, Plaintiff was moved to isolation/segregation in Unit 2D where he "had no problems." (Id. at 6). An official may escape liability for known risks "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844. Accordingly, even if these moves did not result in Plaintiff being completely free from harassment, he has not alleged administrative action which was unreasonable.

Alternatively, Plaintiff complains that other officials failed to assist him in reporting his assault to authorities. First, he states that "nothing was done" after he reported the incident to Defendant Williams and the LPC, but he later elaborates that their specific failure was merely that they did not assist him in reporting the crime or provide counseling — a default he alleges went against policy. (Doc. No. 1, at 4.) "Violations of prison policies or procedures, standing alone, do not infringe upon an inmate's constitutional rights . . . ." Twillie v. Bobbitt, 2021 WL 3046525, at *5 (S.D. Ga. June 28, 2021). Plaintiff does not state how this default otherwise implicates his constitutional rights, and thus this claim fails. As to Defendant Freesemann and Defendant Wilcher, Plaintiff is frustrated that, even though they were not directly involved in his plight, they merely told him to report the crime to

10

the relevant police station instead of helping him make the report. (Doc. No. 1, at 4-5.) However, these Defendants have no heightened constitutional duty to assist Plaintiff merely based on their supervisory role or on a *respondeat superior* theory. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) ("Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation.") In any event, Plaintiff ultimately reached the police department to report the crime. (See Doc. No. 1, at 7.) Because Plaintiff did not allege how these Defendants were complicit in a constitutional violation or caused him injury, claims against them fail as well.

Finally, Plaintiff did not mention Defendants Novak, Cochran, or the Unit ID Supervisors at all in his factual recitation. Thus, he fails to state a cognizable claim against these Defendants. Because he failed to allege a substantial risk of serious harm, any single Defendants' deliberate indifference to that risk, or causation of injury from that risk, Plaintiff fails to state an Eighth Amendment Claim.

## IV. CONCLUSION

For the reasons explained above, Plaintiff has failed to state any arguably viable claims in his pleadings. Therefore,

pursuant to 28 U.S.C. § 1915(e)(2)(B), **IT IS HEREBY ORDERED** that this case is **DISMISSED WITHOUT PREJUDICE**. The Clerk is directed to **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 13th day of June, 2022.

_____
UNITED STATES DISTRICT JUDGE